# EXHIBIT D

Case 1:14-cv-00048-AJN-HBP   Document 125-4   Filed 09/13/15   Page 2 of 4

JONATHAN ROSEN                                              December 01, 2014
COLUMBIA CASUALTY vs. NEIGHBORHOOD RISK                                  1–4

### Page 1

```
 1
 2   UNITED STATES DISTRICT COURT
 3   FOR THE SOUTHERN DISTRICT OF NEW YORK
 4   ------------------x      14 Civ. 0048 (AJN)
 5   COLUMBIA CASUALTY COMPANY,
 6                  Plaintiff,
 7
 8      -against-
 9
10   NEIGHBORHOOD RISK MANAGEMENT CORPORATION,
11                  Defendant.
12   ------------------x
13              DEPOSITION OF JONATHAN ROSEN
14                 New York, New York
15              Monday, December 1, 2014
16
17
18
19
20
     Reported by:
21   TOBA ALIZA KATZ
22
23
24
25
```

### Page 2

```
 1
 2              December 1, 2014
 3              2:00 p.m.
 4
 5      Deposition of JONATHAN ROSEN held
 6   at COLLIAU, CARLUCCIO, KEENER, MORROW,
 7   PETERSON & PARSONS, New York, before
 8   TOBA ALIZA KATZ, a Stenotype Reporter
 9   and Notary Public of the State of New
10   York.
```

### Page 3

```
 1
 2   A P P E A R A N C E S:
 3
 4   COLLIAU, CARLUCCIO, KEENER, MORROW, PETERSON
 5   & PARSONS
 6   Attorneys for Plaintiff
 7      333 South Wabash Avenue
 8      Chicago, Illinois 60604
 9   BY:  LISA A. WILSON, ESQ.
10
11   DORNBUSH, SCHAEFFER, STRONGIN & VENAGLIA, LLP
12   Attorneys for the Defendant
13      747 Third Avenue
14      New York, New York 10017
15   BY:  WILLIAM F. COSTIGAN, ESQ. (Of counsel)
```

### Page 4

```
 1
 2           IT IS HEREBY STIPULATED AND AGREED,
 3   by and between counsel for the respective
 4   parties hereto, that the filing, sealing and
 5   certification of the within deposition shall
 6   be and the same are hereby waived;
 7           IT IS FURTHER STIPULATED AND AGREED
 8   that all objections, except as to the form
 9   of the question, shall be reserved to the time
10   of the trial;
11           IT IS FURTHER STIPULATED AND AGREED
12   that the within deposition may be signed
13   before any Notary Public with the same force
14   and effect as if signed and sworn to before
15   the Court.
```



Case 1:14-cv-00048-AJN-HBP   Document 125-4   Filed 09/13/15   Page 3 of 4

JONATHAN ROSEN                                                December 01, 2014
COLUMBIA CASUALTY vs. NEIGHBORHOOD RISK                                  41–44

Page 41

1        J. Rosen
2  can parse out parts of a contract; I
3  think you are going to look at the
4  entirety of it.
5      MR. COSTIGAN:  What's at issue is
6  the formula, and your question --
7      MS. WILSON:  Bill, I'm going to
8  call Judge Pitman if you keep with the
9  speaking objections.
10     MR. COSTIGAN:  Go right ahead.
11     THE WITNESS:  Let's keep going.
12     MR. COSTIGAN:  There's an
13 objection to that question.
14     Q.   In reviewing the SIR endorsement
15 and the buyout endorsement, did you make
16 any attempt to harmonize the two
17 endorsements?
18     A.   I don't know what you mean by
19 "harmonize."  You have an SIR endorsement
20 that sets forth the obligations of the
21 insured in relation to its SIR obligations.
22 You then have an SIR buyout endorsement and
23 its successor, I guess, which provide a
24 mechanism to allow the insured to
25 essentially buy out or escape from any

Page 42

1        J. Rosen
2  further obligation towards an SIR
3  obligation, so I don't really know what you
4  mean by "harmonize."  One imposes an
5  obligation, the other one facilitates a
6  buyout of that obligation.
7      Q.   Would you agree that the
8  self-insured retention endorsement governs
9  the insured's responsibility to pay for
10 losses prior to the buyout date?
11     A.   Yes.
12     Q.   Do you understand that those
13 losses would include both paid and reserve
14 losses?
15     A.   No.  I think the obligation of
16 the insured is to satisfy its self-insured
17 retention in relation to payments.
18     Q.   What part of the endorsement
19 leads you to that conclusion?
20     A.   I don't have the endorsement in
21 front of me, so you can't ask me that
22 question in a vacuum.  If you want to show
23 it to me, I'd be happy to look at it.
24     Q.   I don't have it, actually.
25     A.   I can't remember it off the top

Page 43

1        J. Rosen
2  of my head, but certainly the SIR is an SIR
3  in relation to paids, it's what the
4  insured's retention is in relation to
5  paids, both indemnity and defense.  That's
6  how it gets **.
7      Q.   Do you know what insurance
8  reserves are?
9      A.   Yes.
10     Q.   Can you tell me your
11 understanding of what a reserve is?
12     A.   A reserve is an amount that is
13 described by an insurance company as its
14 potential obligation in relation to an
15 existing claim that is known but has not
16 yet been satisfied.
17     Q.   In the insurance industry,
18 reserves are treated as liabilities; aren't
19 they?
20     A.   They are treated as liabilities,
21 yes.
22     Q.   They are in fact known
23 liabilities; are they not?
24     A.   They are an estimate of known
25 liabilities.

Page 44

1        J. Rosen
2      Q.   Under New York law, insurance
3  companies are required to identify their
4  reserves as liabilities on their balance
5  sheets; is that right?
6      A.   I think I've already agreed to
7  that proposition.  It was your last
8  statement that I didn't exactly agree with.
9      Q.   What part did you not agree with?
10     A.   That it's a known liability and
11 implicit in that is that it's an exact
12 liability.  It's not an exact liability;
13 it's a reserve for potential liability, and
14 you can resolve that liability within that
15 reserve, for that reserve, or about that
16 reserve.
17     Q.   Do you know what an allocated
18 claim cost is?
19     A.   Yes, I believe I do.
20     Q.   What is an allocated claim cost?
21     A.   It's a cost associated or
22 allocated to a particular claim.  It could
23 be on a paid or a reserve basis.
24     Q.   It could be on a paid or a
25 reserve basis?



Case 1:14-cv-00048-AJN-HBP   Document 125-4   Filed 09/13/15   Page 4 of 4

JONATHAN ROSEN                                                December 01, 2014
COLUMBIA CASUALTY vs. NEIGHBORHOOD RISK                              45–48

Page 45

1         J. Rosen
2      A.   Correct.
3      Q.   So a reserve could be an
4  allocated claim cost; is that right?
5      A.   Yes.
6      Q.   I want to go back to the
7  materials relied upon in Exhibit B.  I
8  think you mentioned before that you believe
9  you reviewed the SIR endorsement although
10 it is not listed here.  Is there any other
11 document or material that you reviewed
12 that's not identified on this list?
13     A.   Not that comes to mind.
14     Q.   I asked you initially whether you
15 could have rendered your opinions without
16 reviewing any of these materials, and you
17 had said there was some value in the e-mail
18 chain that's material number 2.  I don't
19 want to misconstrue what you said, but I
20 think that's what you said; is that right?
21     A.   I agree.
22     Q.   Obviously the buyout terms you
23 need to review too.  Is there anything else
24 on this list that you felt or feel that
25 there was value in reviewing and rendering

Page 46

1         J. Rosen
2  your opinion?
3      A.   Yes, well, the actual reserve
4  numbers that I utilized for purposes of the
5  additional premium calculation that's in my
6  report were derived from the first amended
7  complaint, so that was useful.
8      Q.   With the exception of the policy,
9  the parts of the policy that are excerpted
10 here, which is number 3,4,5 and the SIR
11 endorsement, which is not identified, so
12 the remaining materials -- I'm sorry, and
13 the common policy conditions, anything
14 policy-related.  To render your opinion
15 that the endorsement is clear and
16 unambiguous, did you need to rely on the
17 remaining exhibits, i.e., the exhibits that
18 are not the policy?
19     A.   The answer is no.
20     Q.   I don't mean to be flippant, but
21 if you don't need to look at extrinsic
22 material to provide an opinion that the
23 policy is clear and unambiguous, why is
24 your testimony needed to render that
25 conclusion?  Shouldn't we just be looking

Page 47

1         J. Rosen
2  at the terms of the policy itself then?
3         MR. COSTIGAN:  I object, that's
4      beyond the scope of this deposition.
5      A.   I think that when one gives an
6  insurance or reinsurance practitioner a
7  policy to look at, they are not looking at
8  it as an uneducated person.  In other
9  words, they are looking at it based on the
10 knowledge that they have of the industry
11 and how the industry operates, so when I
12 looked at the formula, for example, and I
13 looked at the clear and unambiguous
14 language of the formula, I think that it's
15 helpful to have an industry person look at
16 the formula and see whether it makes sense
17 from a buyout perspective for those terms
18 to be incorporated.  And when I saw -- so I
19 think that it's helpful to look at those
20 terms and get an appreciation of the
21 application of those terms and why those
22 terms make sense within the context of the
23 contract that you're looking at.
24     Q.   I'm going to try to re-piece
25 together what you said.  I think you said

Page 48

1         J. Rosen
2  it is helpful to have an industry person
3  make sense of the terms of the endorsement
4  from a buyout perspective.  If you don't
5  mind, let me just re-ask the question since
6  this is such a -- apparently an issue.
7         If the terms of the policy are
8  clear and unambiguous, why do we need your
9  expert testimony to interpret them?
10     A.   Because there are certain terms
11 of art and it may be helpful to have a
12 practitioner review and look at those terms
13 of art and determine their meaning.
14     Q.   What terms of art are you
15 providing that testimony regarding?
16     A.   Well, you have a formula, and
17 your formula includes within its ambit paid
18 losses and expenses and case reserve losses
19 and expenses, and a factor is applied to
20 those.  So from a practitioner perspective,
21 you look at that and say, "Does that make
22 sense from a term of art perspective to
23 determine the value of the outstanding --
24 of the outstandings," if you will.
25     Q.   You had mentioned before that the

